The next case for argument is 14-1078 Phil-Insul Corporation v. Reward Wall Systems. Mr. Adams, whenever you're ready. This case involves the lower court's construction of two of the limitations in the independent claims of the 933 patent. I'd like to address first the adjacent limitation as we refer to it. Our argument is simple, and that is that the lower court severely narrowed the scope of the claim of Claim 1. And in doing so, it made Claim 2, dependent on Claim 1, meaningless. And I can demonstrate that by simply looking at the two claims themselves, Claim 1 and Claim 2. Claim 1 recites a construction member. And a construction member is defined in the specification as being either a panel or a block. And a block is simply two panels that are spaced apart, and that's where the concrete is poured in order to create the wall. The construction member has interconnecting means on the top and on the bottom edges. The interconnecting means has a pattern. And the pattern has at least two longitudinally extending rows of projections, alternating projections and recesses. But importantly, Claim 1 does not state where those two rows are located. In other words, where they are positioned. Obviously, in the case of the panel, since there's two rows and one panel, they must be on the same panel. But in the case of the block, there are two rows, and one row may be on one panel, and one row may be on the other panel. However, the lower court construction of adjacent says that the two rows must be next to each other on the same panel or sidewall. And panel and sidewall are synonymous terms. So essentially, the lower court's holding with respect to the construction with respect to Claim 1 has rendered Claim 2, which is a dependent claim. It recites a block, that is, two panels. It says that each panel has one, at least one, row. So the construction of the lower court with respect to Claim 1 and what is said clearly in Claim 2 are in direct conflict. They are irreconcilable. And so consequently, our position is that Claim 1, as the court construed it, has rendered Claim 2 meaningless. It just has completely destroyed the meaning of Claim 2. And this court has stated in several cases that we cited at page 25 of our opening brief, the Oracle case comes to mind and the Schoenhaus case, that a construction of an independent claim that renders a dependent claim meaningless must be incorrect. And it is on that basis that we would argue that the lower court's construction of Claim 1 is incorrect and that the court should overturn that construction. Wait a minute. Let's be clear. I don't understand what you're saying. Are you saying that the case law is that you cannot trump the principle you're espousing? Because I thought it could be trumped, even if you're right about it renders Claim 2, the dependent claim, meaningless. That there are certainly circumstances where we trump that with prosecution history, with various things. Well, I don't think that the defendants cited any such case, and I know of no such case. In other words, there may be... Well, I think the case is Typhoon Touch, but I may be mistaken about that. Are you familiar with that case? Again, please. Typhoon Touch. Typhoon... I may be mistaken. Typhoon Touch. I think Typhoon Touch does claim that a construction... Let me think about that a moment. Typhoon Touch does say that the prosecution history may trump an instance in which one is arguing that a claim is inconsistent with another claim. But that's different than... An inconsistency is certainly not a direct conflict. There is no... The Typhoon case simply doesn't address a case in which the independent claim and the dependent claim are directly in conflict. That's my take of the Typhoon case, Your Honor. So here, if I recall correctly, the adjacent to limitation was added during prosecution. Is that correct? Which adjacent, Your Honor? There are two adjacents in the claim. And one adjacent was in the claim as it originally was issued, and that is in the limitation that we are here discussing. There is another instance of adjacent in the claim, but that was done during the reexamination period for the purpose of trying to clarify the fuzziness that was left by the Board of Appeals. So the adjacent limitation we're talking about was in the original claim, and that is the construction. Now, the other limitation that we need to address is the dimension limitation. And again, our argument is, again, that it was just narrowly construed. In this case, the lower court construed it completely based on the reexamination history, and we have no argument with that. You have no argument with what? We have no argument with the fact that the determination should be based solely upon the prosecution history. Whereas in the other limitation, we have an argument that says it's a specification... I think the court absolutely misunderstood what was going on in the prosecution history. And, you know, I would go back to the 1994 prosecution history in which the defendants suggested to the court that when the claims in the original application, there were claims that had zero rows, one row, and two rows. And the defendants argued that the examiner rejected the claims with zero rows and one row. And then the applicant then amended the claim to recite two rows. But what it didn't tell the lower court is that claim six was a two-row claim. So that the construction by the examiner was clearly that the two rows were... or that the number of rows was not the basis of patentability. It was only when the defendant or the applicant introduced the term in claim seven, the examiner had stated that if claim seven was brought into claim one, and therefore there would be two rows, and the important point was that there would be a... that the one row or a recess in one row must be adjacent to a projection in the other row. It was only with that limitation that the claim became allowed. So it had nothing to do... No, I'm sorry. I'm a little confused. I thought we were talking about the dimension limitation. So maybe I just misunderstood completely. If we can go back to the dimension, the prosecution history... Oh, I'm sorry. Go back to the dimension? Yes. Why is that not crystal clear in terms of what definition you're offering for dimension? Well... That definition included the word and, not or. In other words, the district court's construction seems to be consistent with the representations made during... Well, the district court and the dimension limitation based it entirely on the fact that in the course of the prosecution, the attorney made the statement. It quoted from the Oxford English Dictionary the word substantially in dimension, and dimension said that it is a measurable spatial extent of any kind as length, breadth, area, volume. When the attorney went to argue that, he put an and between area and volume. And so instead of there being one of four parameters that was the definition... But that was the patentee's attorney. Why are you not bound for it? I mean, you can say he made a mistake. He meant to use the word or, and he used the word and mistakenly. But why can't the examiner and the public rely on that representation? Because the entire remaining part of the record is completely inconsistent with that. For example, is that when the examiner again rejected, an appeal was taken to the Board of Appeals, and the Board of Appeals then had to decide whether this Lariello reference showed projections and recesses of the same dimension. And in doing so, it used length in terms of whether they were the same. Moreover, if they had used that conjunctive definition that the attorney mistakenly spoke of, they would have had to make a calculation of area and volume, and they clearly did not. So the Board was clearly saying that the dimension should be measured along the longitudinal axis. That's what the patentee said throughout the entire prosecution history, except for that one singular event in which we say that there was an attorney error. And no, the public cannot rely upon that error if it is so obvious. I mean, the definition from the dictionary and the misparaphrased by the attorney was within ten lines of one another on the same page and the same response. It was clear, and clear even in that singular response. And what was your proposed definition? Because I didn't see it in your proposed construction. I didn't see it in the blue brief. For dimension, we would have to go back and say that it's the Oxford English Dictionary. What did you say to the trial court in the first instance? We said that it is measured along the longitudinal axis. That was your proposed definition? Yes, that's what we proposed. I want to bring you back to the original claims. And I'm looking at the Amvic Corporation red brief where they quote on page 7 the original claim. There's no adjacent limitation in that. In the original claim? Yes. Yes, there must certainly be, Your Honor. Well, look at it. Okay. Am I misreading it? Page 7. Okay. And they say on the next page, neither claim 1 nor claim 4 originally include an adjacent limitation. I'm sorry, say again, Your Honor, please. They say that the claims didn't include an adjacent limitation in the beginning, contrary to what you told me. Yes, and they're wrong, Your Honor. Well, show me. Okay. Because the claims quoted here doesn't include an adjacent limitation. On what page are you at? Page 7 of the Amvic brief. I'm sorry, I misspoke, Your Honor. Well, you should know it better than to misspeak. Well, I'm sorry. When the claim was originally submitted, claim 1, it had no rows, so there obviously was no purpose in adjacent. You told me that the original claim included an adjacent limitation. That was not accurate. When the claim issued, it had adjacent in it, but not when the claim was submitted. And that's what I was arguing is, is that when the – No, you told me that the claim – I said the adjacent limitation was added during the prosecution. You said no, it was in the original claim. That was not correct. Well, I guess it was not in the original claim it submitted. That's correct, Your Honor. And I was in error. I was referring to the claim as it issued, and it certainly was, because that was what convinced the examiner to allow the claim. The phrase is that a recess in one row is adjacent to a projection in the other row. That was what gained patentability. It was not the number of rows that the defendants have argued, but it was that phrase that I just described to you. And yes, that was done during the prosecution of claim 1 in the original prosecution history. If I have any more questions. All right. We'll restore a couple minutes of rebuttal. Okay. Thank you, Your Honor. And we'll add a minute for each person. You all are splitting your arguments? Is that by – that's by subject, right? Yes. So you're doing – you are dimensions? I'm adjacent. Oh, you're adjacent. Yes. Okay. May it please the Court. My name is Rachel Hewey, and I represent the appellees Polly Swarm and Eudora, and I will be discussing the adjacent limitation. Counsel for AMVIC, Corian Begrowski, will be discussing the dimension limitation. I wanted to start by responding to an argument that claim 2 becomes meaningless if the court's claim construction is adopted, which I don't agree with. First of all, claim differentiation doesn't even apply here. Claim 1 is directed to a member. Claim 2 is directed to a block. Therefore, it's narrowed. So claim differentiation does not apply. Even if claim differentiation did apply, as Judge Coates pointed out, it's just a presumption that claims have different scope, but it's not a hard and fast rule, and you should certainly look at the specification in the prosecution. Well, and one wonders whether claim differentiation means much if the claim was amended during the prosecution, which would change the meaning of the original claims, which is apparently what happened here. Yes, Your Honor. Agreed. Are we looking at the reexamination certificate claims? That's what we're looking at, right? Yes, Your Honor. It's in page 13. Putting aside history for a minute, can you explain why, under the district courts, your definition of adjacent claim 2 still, A, makes sense, and B, has some actual applicability? Sure. So the doctrine of claim differentiation suggests that claims have different scope. And just on its face, claim 1 is directed to a construction member, and claim 2 is directed to a block. Now, we all agree construction members can exclude blocks or panels. So on its face, claim 2 has been narrowed. It is not the same scope as claim 1. So claim differentiation does not apply. So I suppose that's the simple answer. Specific to the question of whether the fact that claim 1 has... Maybe this will help me. Without using the term, the phrase claim differentiation, explain to me why, on the district court's construction of adjacent, claim 2 still makes sense and applies to something. Sure. So claim 1 applies to a panel that has two rows or a block, the panels of which have two rows. And does claim 1 use the term panel? No, claim 1 doesn't use the term panel. It uses the term construction member, and the specification suggests that construction members can be blocks or panels. Okay. So claim 2 is directed to a block with all the limitations of claim 1, which means the block has to have at least two rows on each panel. And the fact that it says at least one, I mean, that's not inconsistent. So claim 1 says at least two, and then claim 2 says at least one, which includes at least two. But, again, you always have to have those limitations of claim 1 and claim 2. I'm not understanding how that isn't inconsistent with claim 1. So claim 1 requires... Again, claim 2 has to have all the elements of claim 1, and claim 1 says at least two rows, right? When claim 1 goes on to say at least one row, that's not inconsistent. If claim 1 said two and claim 2 said one, then there would be an arguable potential inconsistency alone. But it says at least two and at least one, so they're not inconsistent. It would be like claim 1 said a blue house, and claim 2 said a two-story house according to claim 1 that has two stories and isn't red. Well, isn't red isn't inconsistent with blue. So it's just an additional requirement that has to be met. So the blocks always have to have at least two rows. And I want to... But in claim 2, it can have one row, correct? Well, at least. It has to have... But it can have one row. And I think what they're saying is if it has one row, then your definition of adjacent can't make any sense. Claim 2 cannot have at least... Claim 2 cannot only have one row because it has to have all the limitations of claim 1, which requires at least two rows. And I think that it's important to note that... So it's just bad drafting or misdrafting? Well, the reality is it was added during the re-examination when the applicant was attempting to recapture the subject matter that it had abandoned during the original prosecution. I think it's important to note the original prosecution, the claim language of claim 1, allowed for any number of rows. It didn't have a row limitation. It didn't have an adjacent limitation. And then claim 6 had a requirement that there be projections and recesses alternating. Claim 7 added two rows. Claim 7 added this adjacent requirement, right? So claim 1 is originally filed would cover what the applicant now wants to cover, which is a single row product. It was rejected. The Patent Office said the Ho-Robin prior art reference discloses a block with a single row panel, and claim 1 was rejected as was claim 6. So the applicant took all of the limitations from claims 6 and 7, put them into claim 1. Two rows, alternating projections and recesses. The alternating projections and recesses of those two rows are adjacent and got the claim over the prior art that was rejected, the Ho-Robin single row product. Well, it seems to me what you're saying is that claim 2 is inconsistent with claim 1 when it says at least one row, suggesting one row, because claim 1 has two rows. So it's drafted. It doesn't make sense. Well, if it said two, if claim 1 only said two rows and claim 1 only said one row, I would agree that it's inconsistent. I think the fact that it says at least two and at least one, I think as Judge Prost said, maybe it's not drafted as it should have been, but it's not necessarily inconsistent. I mean, it's not limiting to say at least one when you have something else saying at least two. Maybe. Maybe. But I'd also like to point out, you know, the other evidence we have, I think that the original prosecution is very clear that the claim scope that the patentee is trying to obtain was abandoned. And in fact, claim 4, which only had one row, was amended with the exact same language as claim 1, and the applicant has admitted that he surrendered the claim scope of the one row product for claim 4 with the exact same language added. And that's on page, I think, 43 and 44 of his brief. But the reexamination makes it very clear that the applicant tried to recover that single row product unsuccessfully, added claim 19, put transversely in line, bid for adjacent. The patent office said that that wasn't okay because it was going to not have the limitations of the other claims. You can't expand the scope. During reexamination, so the applicant went back and amended claim 19 to say, okay, not transversely aligned, let's go back to adjacent. And then the claim ultimately issued. And once again, the applicant acknowledges that that may have been a surrender of that single row subject matter for claim 19, but makes arguments about how you can't import that into the claim 1, exact same language. Third point is we know that the applicant used the term adjacent consistent with the way that the district court construed it because when distinguishing the prior art, the Gaiero reference during reexamination, the applicant talked about how the alternations of Gaiero were not adjacent because they were spaced apart. So we know with 100% certainty that adjacent doesn't mean spaced apart as the applicant would now have you suggest. Are there no further questions? Thank you very much. Thank you. Now we're on to dimension. Yes, Your Honor, we're on to dimension. With dimension, there is no error. And the court, we both agree that the court's construction was based in the prosecution history. In the prosecution history, the patentee gave a very clear definition. They said it necessarily means length, breadth, area, and volume. He was very clear. He went on to also support that definition by arguing it's axiomatic the different shapes cannot have the same dimensions. We know that this... What do you say to your friend's argument that he just made here a few minutes ago to us, that that's one little snippet of the prosecution history before the examiner, but when it got to the board and as it went through the process, they all recognized what was going on here and that was broader? We contend that's not just one little snippet. And even if there is one statement where it's very clear where they define a term, it's still in the public record, and the public should be able to rely on it. Second, the prosecution history is actually consistent with our argument and not his. If you look at it as a conjunctive definition, you have length, breadth, area, and volume that need to describe dimension. If it's disjunctive, you're going to have length or breadth or area or volume. The patentee only argued length. If it was any of those four, he would have had to distinguish Gariello on both the breadth and the area and the volume as well. And he did not discuss all of those parameters, all those dimensions. He just stuck to length throughout the entire prosecution. And at the end of the prosecution, he offered that dimension could be measured only along the longitudinal axis. And the examiner explicitly rejected that amendment. So the patent claims themselves support the court's construction. The patent claims say substantially the same dimension. It does not say substantially the same longitudinal dimension. And the specification supports this as well. The specification describes the projections and recesses three-dimensionally. They're not flat. They do not talk about them by their longitudinal measurement alone. They discuss the dimension as in the shape and the overall dimension of the projections and recesses. So the specification and the claim support the court's claim construction. The prosecution history supports the claim construction because the patentee was clear by saying that it necessarily means the length, the breadth, the area, and the volume. The patent office rejected the attempt to broaden the claim to just the longitudinal axis measurement. And between the prosecution history and the support of the patent, it completely supports the court's construction of dimension. While we submit that the court was correct in constraining dimension consistently with the claims, it's supported also by the public should be able to rely on the prosecution history, which clearly stated the definition, and we submit that the court from the lower court's construction of dimension. Thank you. Just one point, and that is, with respect to Claim 2, Claim 2 does recite a single row on a panel. So that there is, it's clear from Claim 2 that we're talking about a single row on each panel. And since I misspoke earlier, I brought that claim here, which says, each of said panels having a pattern on the top and bottom edges. Each of said patterns on each of said panels comprising at least one longitudinal extending row. So it's saying that you have two panels. It's a block claim. You have two panels. And that on each of the panels, there is at least one row. And that's why it's consistent with Claim 1. Claim 1 says there are two rows, but it doesn't tell you where they are. Claim 2 says, if you have a block, it has two panels, and you have one row on each panel. One row on each panel makes two. So it's consistent with Claim 1. The only other point that I would make is that, with respect to that 1994 prosecution, is that what the defendants are arguing is that basically the claim was allowed because of the number of rows. And that just simply is not true. Claims with zero rows, one row, and two rows were all rejected by the examiner. It was only when the limitation in Claim 7, which the examiner stated, if you put that into Claim 1, I'll allow it. And that is the language that a recess in one row is adjacent to a projection in the other row. So that was the critical language, because otherwise the examiner would have rejected the claim based on the second reference, again, which the defendant did not mention to the lower court. So I think it's clear that there was no surrender of a block with a single row on each panel in the original prosecution history. We have the argument. We thank all counsel. The case is submitted.